

**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**TAWANA C. MARSHALL, CLERK**
**THE DATE OF ENTRY IS**
**ON THE COURT'S DOCKET**



**The following constitutes the ruling of the court and has the force and effect therein described.**

**United States Bankruptcy Judge**

**Signed August 18, 2011**

---

## THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 09-38643-bjh-7 |
| CHRISTOPHER ADAM ARNETTE, | § | (Chapter 7) |
| | § | |
| Debtor. | § | |

| | | |
|---|---|---|
| THE WARD FAMILY FOUNDATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adversary No. 10-03062[1] |
| | § | |
| CHRISTOPHER ADAM ARNETTE, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION

Before the Court is Plaintiff's Motion for Attorneys' Fees, Non-Taxable Expenses, And Expert Fees And Brief In Support (the "Motion")[2] filed by The Ward Family Foundation (the

---

[1] Consolidated with adversary proceeding number 10-03048.
[2] [Docket No. 99.]

**MEMORANDUM OPINION**                                                                                                   **PAGE 1**

"Foundation").[3] In short, the Foundation seeks to recover the attorneys' fees and expenses it incurred in connection with enforcing its rights against Christopher Adam Arnette ("Arnette") and certain of his companies. Arnette opposes the Motion. For the reasons explained below, the Motion will be granted in part, with the Court finding that the Foundation is entitled to recover $397,913.88 of reasonable fees and expenses and conditional fees as also explained below. Those amounts will be added to the Foundation's nondischargeable judgment against Arnette. *See In re Christian*, 111 B.R. 118, 122 (Bankr. W.D. Tex. 1989) ("Simply put, if the claims against the defendant in the present case are determined to be nondischargeable, the attorneys' fees are also nondischargeable.")

## I.  BACKGROUND FACTS[4]

This lawsuit began in state court when the Foundation sued Arnette, HomeQwest Homebuyers, Inc. ("HomeQwest") and Autopilot Property, LLC ("Autopilot") for, among other things, fraud and breach of contract in connection with various real-estate investments. The Foundation hired Bell Nunnally & Martin LLP ("Bell Nunnally") to represent it in the lawsuit.

On December 22, 2009, Arnette filed for Chapter 7 bankruptcy relief. The Foundation then removed the state court action to this Court. The Foundation also filed another adversary proceeding in this Court objecting to (i) the dischargeability of the judgment it anticipated receiving in the removed state court action, and (ii) Arnette receiving a discharge in his underlying bankruptcy case. The removed action and the nondischargeability/discharge action were consolidated for trial.

---

[3] The Court has jurisdiction over the parties and the issues here pursuant to 28 U.S.C. §§ 1334 and 157(b). This Memorandum Opinion contains the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

[4] A fuller recitation of the facts of this lawsuit may be found in the Court's Memorandum Opinion dated June 7, 2011. [Docket No. 95.]

The Court tried this lawsuit on April 13, 14, 15, and 20, 2011. At the outset of trial, the parties announced an agreement to liquidate the amount of their attorneys' fees following the issuance of the Court's liability ruling. Liability was decided on June 7, 2011, when the Court issued a Memorandum Opinion in which it ruled in favor of the Foundation on its claims for: (i) fraud (awarding actual damages of $950,475.30 against HomeQwest and $48,901.89 against Autopilot); (ii) breach of contract (awarding actual damages of $821,106.57 against HomeQwest and $32,374.02 against Autopilot); and (iii) in the alternative, suit on a note (awarding actual damages of $715,212.85 against HomeQwest and $23,182.43 against Autopilot). The Court further ruled that Arnette was personally liable for the foregoing damages as the agent and alter-ego of HomeQwest and Autopilot and that Arnette had used these entities to perpetrate a fraud primarily for his own personal benefit. The Court ruled that $999,377.19 of Arnette's liability to the Foundation was nondischargeable pursuant to §§ 523(a)(2)(A) and (a)(6) of the Bankruptcy Code and that $216,513.09 of Arnette's liability to the Foundation was nondischargeable pursuant to § 523(a)(4) of the Bankruptcy Code. The Court also ruled that the Foundation was entitled to recover its reasonable attorneys' fees and expenses under the terms of the promissory notes at issue and under § 38.001 of the Texas Civil Practice and Remedies Code.

The parties, after receiving the Memorandum Opinion, agreed to submit the attorneys' fees and expenses request to the Court by pleadings and affidavit. Accordingly, on July 12, 2011, the Foundation filed the Motion requesting an award of attorneys' fees of $357,051.00, nontaxable expenses of $22,853.84, and expert fees of $26,501.14.[5] The Foundation also sought conditional attorneys' fees of up to $195,000.00, depending on the number of appeals that may

---

[5] In support of the Motion, the Foundation offers the Affidavit of Christopher B. Trowbridge (the "Trowbridge Affidavit"). Bell Nunnally's time records are attached as exhibits to the Trowbridge Affidavit.

**MEMORANDUM OPINION** PAGE 3

follow in this case.[6] On July 27, 2011, Arnette filed an objection. The Court has carefully reviewed those documents in reaching its decision here.

## II. LEGAL ANALYSIS

### A. The Foundation Is Entitled To Recover Its Reasonable Attorneys' Fees

As this Court has previously stated:

> Under the American Rule, each party to a lawsuit must bear his or her own costs and the prevailing litigant cannot collect attorney fees from the losing litigant as a general rule. But there are exceptions to the rule that allow a recovery of attorneys' fees when, as relevant here, a provision in a contract allows them or a statute authorizes them. The Bankruptcy Code, likewise, recognizes that attorney's fees incurred in litigating dischargeability issues are generally not recoverable in the absence of a contractual or statutory provision.

*Posey v. Kinkaid (In re Kinkaid)*, 445 B.R. 731, 741 (Bankr. N.D. Tex. 2011) (quotation marks and citations omitted); *see also Frazin v. Haynes & Boone, LLP (In re Frazin)*, 413 B.R. 378, 400 (Bankr. N.D. Tex. 2009).

This Court has also previously recognized that the Foundation has both a statutory and contractual basis for recovering its attorneys' fees and expenses from Arnette. (Mem. Op. at 34.) Specifically, the Court found that the Foundation, "[a]s the prevailing party on its breach of contract claim, … is entitled to recover its reasonable attorneys' fees and expenses from HomeQwest and Autopilot pursuant to the terms of the [eight promissory] notes [at issue] and pursuant to section 38.001 [of the Texas Civil Practice and Remedies Code]." (*Id.*)[7] The Court

---

[6] Specifically, the Foundation requests an additional $15,000.00 if a motion challenging the judgment is filed; an additional $35,000.00 if the judgment is appealed to the United States District Court; an additional $35,000.00 if the judgment is appealed to the Fifth Circuit Court of Appeals; an additional $35,000.00 if a petition for review to the United States Supreme Court is filed and a response is required; and an additional $75,000.00 if the United States Supreme Court grants certiorari.

[7] Seven of the eight promissory notes contain the following language permitting the recovery of attorneys' fees:

> If this note or any instrument securing or collateral to it is given to an attorney for collection or enforcement, or if suit is brought for collection or enforcement,

also found that "Arnette should be held personally liable for the debts of both HomeQwest and Autopilot." (*Id*. at 44). Thus, the Foundation is entitled to recover its reasonable attorneys' fees and expenses from Arnette.

Before the Court analyzes the reasonableness of the Foundation's requested fees and expenses, however, it must address Arnette's sole objection to the Motion – *i.e.*, that the Foundation "has failed to segregate [those] fees incurred prosecuting claims which provide for the recovery of fees from those that do not." (Def. Obj. at 2.)[8]

### B. The Foundation Properly Segregated Its Attorneys' Fees

The Foundation asserted claims for which attorneys' fees were recoverable (breach of contract and suit on a note), and claims for which fees are generally not recoverable (fraud and §§ 523 and 727 of the Bankruptcy Code). Under Texas law, a party seeking to recover attorneys' fees incurred on multiple claims must generally segregate its fees between claims that permit recovery of attorneys' fees and claims that do not. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310–11 (Tex. 2006). But, when discrete legal services advance both a recoverable and unrecoverable claim the fees need not be segregated. *Id*. at 313-14. Instead, it is sufficient for the party seeking fees "to submit to the fact-finder testimony from a party's

---

or if it is collected or enforced through probate, bankruptcy, or other judicial proceeding, *then Maker shall pay Payee all costs of collection and enforcement, including reasonable attorneys' fees and court costs*, in addition to other amounts due. Reasonable attorneys' fees shall be 10% of all amounts due unless either party pleads otherwise.

(Pl. Exs. P-44, P-53, P-69, P-76, P-83, P-92, P-100) (emphasis added). Here, the Foundation pled otherwise and thus is not limited to the 10%. Moreover, the eighth promissory note, while not including the above-quoted language, provides that the "borrower [] promises to pay reasonable attorney's fees and court and other costs if this note is placed in the hands of an attorney to collect or enforce the note." (Pl. Ex. P-62.)

Section 38.001 of the Texas Civil Practice and Remedies Code provides for the recovery of reasonable attorneys' fees by a prevailing party on a breach of contract claim. Tex. Civ. Prac. & Rem. Code § 38.001 (Vernon 2008) ("[A] person may recover reasonable attorneys' fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for ... an oral or written contract."); *see Green Int'l., Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997) ("To recover attorney's fees under Section 38.001, a party must (1) prevail on a cause of action for which attorney's fees are recoverable[, such as breach of contract], and (2) recover damages.").

[8] [Docket No. 100.]

attorney concerning the percentage of hours that related solely to a claim for which fees are not recoverable." *RM Crowe Prop. Servs. Co., L.P. v. Strategic Energy, L.L.C.*, No. 05–10–00234–CV, 2011 WL 3211360, at *6 (Tex. App. July 29, 2011) (citing *Chapa*, 212 S.W.3d at 314).

Here, Arnette's only objection to the Foundation's request for fees and expenses is that:

> [The Foundation's] counsel has made no attempt to state a percentage of the total time that would have been spent had the 727 Claims (i.e. the part of the litigation for which fees are not recoverable) not been part of the case. It is not sufficient for the [Foundation] to simply allege that it has not charged for fees solely relating to the 727 Claims since, for example, trial time was consumed to some extent with testimony supporting the [Foundation's] ultimately unsuccessful 727 Claims and such time would not have been expended had the 727 Claims not been part of the underlying case. Similar issues can be raised with virtually every facet of the bills, from research, to depositions and trial preparation.

(citations omitted).

The Court disagrees. From the Court's perspective, the Foundation has done far more than "simply *allege* that [Bell Nunnally] has not charged for fees solely relating to the 727 Claims." (Emphasis added). Instead, the Foundation has offered detailed evidence *showing* that Bell Nunnally examined its billing statements line-by-line and reduced its requested fees for any time spent on the § 727 claims. Indeed, using the evidence the Foundation has provided, the Court is able to look back over two-plus years of time entries and determine exactly how much time Bell Nunnally devoted to the § 727 claims—down to the tenth-of-an-hour. This is the essence of segregation. Thus, the Foundation has done more, not less, than is required under *Chapa*. For instance, when the firm performed a "discrete legal service" that advanced only the § 727 claims, those fees were segregated and reduced. *See e.g.*, (Trowbridge Aff., Ex. 3 at p. 8.) And, when a legal task "advance[d] both a recoverable and unrecoverable claim," the portion of the task that related to the § 727 claims was likewise segregated and reduced, (*id.*), even though,

under *Chapa*, an approximate percentage may stand in for precise segregation in that circumstance.

In fact, each of Arnette's discrete arguments under his failure to segregate objection—that Bell Nunnally failed to reduce its fees when research, depositions, trial preparation, or trial time involved the § 727 claims—is belied by the evidence. Bell Nunnally's timesheets reveal that the Foundation reduced its fees in each of the instances Arnette complains about, and more. *See e.g.*, (Trowbridge Aff., Ex. 3 at pp. 8 (trial and trial preparation), 10 (drafting pleadings), 11 (case strategy), 22 (deposition preparation), 25 (pretrial briefs and research), and 32 (deposition preparation).) The Court is therefore satisfied that the Foundation's fee request properly segregates the work Bell Nunnally performed to advance the § 727 claims and removes those fees from the fees requested in the Motion.

Regarding the fraud and § 523 claims, the Court concludes that the Foundation did not have to segregate the fees it incurred pursuing those claims because the Foundation had to assert those claims in order to collect and enforce the notes and its breach of contract claims against Arnette. As noted previously, the promissory notes at issue provided that, in the event of default, the maker (HomeQwest or Autopilot) must pay the payee (the Foundation) "all costs of collection and enforcement, including reasonable attorneys' fees and court costs."[9] To hold Arnette personally liable for HomeQwest and Autopilot's obligations, however, the Foundation had to pierce the entities' corporate veils. (Mem. Op. at pp. 35-45.) Doing that, in turn, required the Foundation prove that Arnette perpetrated an actual fraud primarily for his own personal benefit. (*Id.* at pp. 36-41.) Thus, the fees incurred to prove Arnette's fraud contributed directly to the Foundation's efforts to collect and enforce the notes against Arnette. The terms of the notes themselves make these fees recoverable.

---

[9] *Supra*, fn. 7.

**MEMORANDUM OPINION** PAGE 7

The Foundation's fees relating to its § 523 nondischargeability claim are also recoverable. Even though the Foundation obtained a judgment against Arnette personally on its suit on a note and breach of contract claims, that judgment would have been discharged in Arnette's bankruptcy case had the Foundation not asserted the § 523 claims. Thus, the fees the Foundation incurred in furtherance of its § 523 claims were part and parcel of its efforts to collect and enforce the breach of contract and suit on a note claims. These efforts fall within the ambit of the recoverable fees under the notes.

Finally, the Court is satisfied, based on the Trowbridge Affidavit, that the Foundation correctly segregated and excluded from its fee request time spent that (i) did not did not advance the Foundation's breach of contract or suit on a note claims against Arnette personally; (ii) related to Arnette's wife's bankruptcy case; and (iii) involved legal work that was not trial related, *e.g.*, bankruptcy specific issues that were not adversary related, tax issues, and issues involving other business dealings between Arnette and other, non-Foundation, Ward entities. (Trowbridge Aff. at pp. 4-5).

For these reasons, Arnette's objection to the Foundation's request to recover its reasonable fees and expenses is overruled.

C.  **Reasonableness of the Foundation's Attorneys' Fees**

Arnette did not object to the reasonableness of the Foundation's attorneys' fees or to the reasonableness of the Foundation's conditional attorneys' fee request. While that does not eliminate the Court's obligation to assess their reasonableness, it is significant that Arnette raised no such objection.

This Court has previously stated the standard for assessing the reasonableness of attorneys' fees in Texas:

> The Fifth Circuit has made it clear that Texas law governs the reasonableness of fees awarded where Texas law governs the rule of decision. Under Texas law, there is a rebuttable presumption that the usual and customary attorneys' fees are reasonable. Further, the Court may take judicial notice of reasonable and customary fees, "along with the contents of the case file in evaluating a request for attorneys' fees."
>
> In *Arthur Anderson & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) the Texas Supreme Court identified eight factors to be considered in determining the reasonableness of an attorneys' fees request. Those factors are: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on the results obtained or uncertainty of collection before the legal services have been rendered.

*Frazin*, 413 B.R. at 415 (internal citations omitted). "The determination of reasonable attorney's fees is a question for the trier of fact." *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 12 (Tex. 1991). After carefully reviewing the Trowbridge Affidavit and its exhibits in light of these factors, the Court concludes that the fees sought in the Motion are reasonable, with a few exceptions discussed below.

The Foundation acknowledges that more professionals worked on this file than might be expected. (Trowbridge Aff. at p. 9.) But, for the most part, the Court is satisfied that the number of professionals and the work they performed was reasonable given the length of this dispute and the breadth of the legal issues involved. Part of the reason for the high number of associates and paralegals on the case was that Bell Nunnally sought to lower its fees, when feasible, by assigning discreet projects such as research and discovery matters to lawyers (or paralegals) with

lower hourly rates. (Trowbridge Aff. at pp. 8-9). Moreover, the Court's concern about overstaffing is allayed to an extent because the Foundation only seeks to recover fees for the primary attorneys who performed substantial work on the file. It has not requested fees for three partners, two associates, and two paralegals that assisted with, but were not primarily assigned to, this matter. In all, the Foundation has reduced its total fees ($410,926.00) by $53,875.00, or by approximately thirteen percent, to $357,051.00.

The Court will further reduce the requested fees by $7,357.50. Of that amount, $857.50 is attributed to charges for an associate who worked a *de minimis* 3.5 hours out of a total of more than 750 associate-hours. The remaining $6,500.00 accounts for duplicative charges resulting from significant time charged for attorney conferences, particularly during the first few months of Bell Nunnally's engagement. To arrive at the $6,500.00 number the Court has reviewed each charge for conferencing on Bell Nunnally's billing statements, considered the number of attorneys present at those conferences and the matters discussed. While it is impossible to determine precisely the time spent at each conference that is duplicative, the Court finds that $6,500.00 represents a reasonable approximation.

The Court therefore concludes that the Foundation is entitled to reasonable attorneys' fees of $349,693.50.

The Court also concludes that the Foundation may recover conditional attorneys' fees of up to $195,000.00, depending on the extent to which the judgment is appealed. The reasonableness of that overall amount—and of the incremental amounts required at each stage of the post-judgment appeals process[10]—is attested to in the Trowbridge Affidavit, and has not been challenged by Arnette. (Trowbridge Aff. at p. 24.) Thus, based on the evidence, those fees are reasonable if the work described is required to be done.

---

[10] *See supra,* fn. 6

### D.  Recovery of Reasonable Expenses and Expert Fees

As noted above, the promissory notes at issue provide that the Foundation is entitled to recover "all costs of collection and enforcement." In addition to attorneys' fees, the Foundation incurred expenses and expert fees as part of those costs. The evidence shows that the Foundation's expenses total $26,268.78 and its expert fees total $30,461.08.[11] The Court finds, and Arnette does not contest, that those expenses and fees are reasonable.

However, because some of those expenses and expert fees were incurred in connection with unrecoverable claims, the Foundation does not seek to recover the full amounts. Rather, the Foundation proposes that the same percentage that resulted from the segregation of the attorneys' fees be applied to the expenses—namely, eighty-five percent.[12] The Court agrees that this is a sensible approach. Indeed, it comports with the Texas Supreme Court's holding in *Chapa* that when fees and expenses for recoverable and unrecoverable claims are sought segregation may be based on percentage estimates.

Eighty-five percent of the Foundation's expenses and expert fees are $22,328.46 and $25,891.92, respectively. Accordingly, $48,220.38 will be added to the Foundation's recoverable fees and expenses.

### III. CONCLUSION

For the reasons stated above, the Court finds that the Foundation is entitled to recover its reasonable attorneys' fees and expenses from Arnette in the amount of $397,913.88, and conditional attorneys' fees of up to $195,000.00. The Foundation is instructed to draft a final

---

[11] The Court notes that Lain Faulkner, the expert in this matter, voluntarily reduced its fees by $7,155.24 to reach the $30,461.08 sought here.

[12] The Foundation proposed eighty-seven percent (representing the $357,051.00 in fees requested out of $410,926.00 in total fees). Because the Court further reduced the Foundation's fees by $7,357.50, eighty-five percent is the correct percentage reduction.

judgment in this matter, circulate it to Arnette's counsel for review and approval as to form, and upload it to the Court for signature.

### END OF MEMORANDUM OPINION ###